## McAFEE v. JUMP.

[No. 16,025. Filed October 13, 1937. Rehearing denied November 23, 1937.]

*Harry J. McMillian,* for appellant.

*Hogg & Leonard,* for appellee.

KIME, J.—Appellee was foreman of a group of men engaged in road construction. One of his duties was to take care of the small tools used by the men and see that none were lost. The work was being done by two shifts of men, a morning shift that worked from six o'clock A. M. to twelve noon and an afternoon shift from that time until six o'clock P. M. When the afternoon shift completed its six hours work a trucker, who had been selected to haul the trailer, containing the tools, attached the trailer to his machine and took it to someone's barnyard, or any other place designated by the appellee, for the night. Appellee always went with the man who hauled the trailer so that he (appellee) would know where to get the trailer in the morning and the trucker would then take appellee to his boarding house. The next morning the one selected to pick up the trailer

containing the tools would, with his automobile, call for appellee at this boarding house (since appellee was the only one in the morning shift who knew where the tools had been left the night before) and they would go after the trailer. Appellee would then help hook it on the automobile and start for the construction point for the day's work.

On the day of the accident herein appellee had been picked up by one Kerekes since Schwitzer's (whose duty it was to get the trailer that morning) automobile was being painted. All three went after the trailer, fastened it onto the automobile and were proceeding to the point of construction with Kerekes at the wheel and while travelling east on state road number 30 a truck was approaching from the west on the wrong side of the road, a collision resulted and appellee sustained the injuries for which he seeks compensation.

There is evidence to the effect that a Mr. Newbick, who was superintendent when appellee first started working for appellant told appellee, that it was his work "to go get the tools" and take care of the tools and the men and that appellee had worked for appellant since 1929 and went after the tools in the morning and put them away for the night as above indicated.

The Industrial Board found, among other things, that "while in the employ of defendant at an average weekly wage in excess of $30.00 plaintiff suffered an injury as the result of an accident arising out of and in the course of his employment" and an award was entered in favor of appellee at the rate of $16.50 per week beginning August 3, 1936, during total disability not exceeding the period of time fixed by law, plus reasonable medical, surgical, hospital, and nurse's services.

It is on this award that this appeal is predicated, the error assigned being that the award is contrary to law and not supported by sufficient evidence.

Appellant contends that there is no evidence that the accident arose out of and in the course of his employment. The evidence most favorable to the appellee shows that the relation of employer and employee commenced at that time in the morning when the appellee arrived at the place where the tools had been left the night before. The injury sustained here occurred after this time and while the tools were being transported from the location where they had been left for the night to the point where they were to be used that day. Consequently there was evidence from which the board was warranted in finding, as it did, that the accident arose out of and in the course of the employment.

Appellant insists that the finding of the board was not sustained by sufficient evidence in that appellee failed to prove that the average weekly wage was $30.00. The evidence is somewhat meager and possibly conflicting but there is sufficient from which the board could find, as it did, that the average weekly wage was $30.00.

The award of the Industrial Board is, therefore, affirmed with a penalty of five per cent.